**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

CASE NO.: _____0:20-cv-60579_____

**CA'TRICE SIMMONS,**

    *Plaintiff*,

vs.

**JM FAMILY ENTERPRISES, INC.,**
a Delaware corporation,

    *Defendant*.
_____/

**COMPLAINT AND
DEMAND FOR JURY TRIAL**

Plaintiff CA'TRICE SIMMONS, through her undersigned counsel, sues Defendant JM FAMILY ENTERPRISES, INC., a Delaware corporation, for damages, and in support thereof alleges as follows:

**JURISDICTION AND VENUE**

1. This action is brought pursuant to the Family and Medical Leave Act, as amended, 29 U.S.C. § 2601, *et seq*. (**"FMLA"**), for back pay, an equal amount as liquidated damages, other monetary damages, equitable relief, front pay, declaratory relief, and reasonable attorneys' fees and costs.

2. This Court has original jurisdiction over this civil action pursuant to 28 U.S.C. § 1331 because this action involves federal questions, as well as the FMLA. The Court has authority to grant declaratory relief under the FMLA, and pursuant to 28 U.S.C. § 2201.

3. At all times relevant hereto, Plaintiff CA'TRICE SIMMONS was a resident of Broward County, Florida, and is competent to bring this action. She currently resides in Georgia.

4. Defendant JM FAMILY ENTERPRISES, INC. is a foreign corporation incorporated in Delaware, authorized to do business in Florida, and is *sui juris.* Its principal place of business is 100 Jim Moran Boulevard, Deerfield Beach, FL 33442. The Defendant is in the business of vehicle distribution and processing, finance and insurance, and retail vehicle sales. Among other things, it operates automobile dealerships selling Toyota and Lexus vehicles.

5. Venue in the Southern District of Florida is proper because the workplace in which the FMLA violations are alleged to have occurred is located in the Southern District of Florida.

6. At all times relevant hereto, the Defendant was covered by the FMLA, because it was engaged in commerce or in an industry affecting commerce that employed 50 or more employees within 75 miles of where Plaintiff worked, for each working day during each of 20 or more calendar workweeks, prior to Plaintiff seeking leave under the FMLA.

7. At all times relevant hereto, Plaintiff was an employee entitled to leave under the FMLA, based on the fact that: (a) she suffered from a serious health condition as defined by the FMLA which necessitated FMLA leave; (b) was employed by the Defendant for at least 12 months prior to necessitating FMLA leave; and (c) worked at least 1,250 hours during the relevant 12-month period prior to her seeking to exercise her rights to FMLA leave.

8. All conditions precedent to bringing this action, if any, have occurred, have been waived, or would be a useless act and are accordingly waived.

**RELEVANT FACTS**

9. Plaintiff worked for Defendant from approximately October 12, 2015 until her termination on August 22, 2019. Plaintiff worked as a non-attorney in Defendant's legal and compliance department.

10. During her tenure, Plaintiff was an excellent employee, whose hard work and professionalism made her a valued contributor.

11. From 2015 through 2019, Plaintiff was subjected to a series of improper conduct by various the Defendant's employees, including direct supervisors. This includes racially inappropriate statements such as a supervisor referring to Plaintiff – who is an African American – as a "skillet," in reference to the color of her skin; and a supervisor referring to Plaintiff and another employee as "Milli Vanilli," in reference to their race and hair styles; among other things. Plaintiff reported these and other incidents to human resources.

12. In 2018, Plaintiff's supervisor mishandled an individual's confidential medical records. As a result, Plaintiff was instructed by the Defendant's legal department to write an incident report detailing the incident. Thereafter, Plaintiff's supervisor began to treat Plaintiff disparagingly with even greater frequency. Over the course of the year, Plaintiff's supervisor would interfere with Plaintiff's work and do whatever he could to make Plaintiff uncomfortable, despite Plaintiff having successfully performed her duties for three years.

B THE BURTON FIRM

13. During 2018, Plaintiff developed a health issue that required intravenous treatments for three months along with a PICC line. The Defendant failed to provide Plaintiff with sufficient support despite appropriate information and notice.

14. The Defendant was deliberately trying to make Plaintiff uncomfortable, ostensibly in hopes that she would quit. While Plaintiff had long been subjected to improper conduct on the part of the Defendant, things became even worse after the incident in which Plaintiff wrote up her supervisor for mishandling confidential medical records, as described above.

15. In 2019, Plaintiff received less-than-favorable reviews containing many inconsistencies and inaccuracies. Plaintiff's reviews suggested insubordinate behavior as well as incompetency. These reviews were pretextual, and were written in furtherance of a scheme whereby the Defendant would unlawfully terminate Plaintiff. Moreover, throughout 2019, Plaintiff's manager treated her with a contentious and dismissive attitude.

16. As a result of the Defendant's conduct, Plaintiff suffered from ailments including but not limited to anxiety, stress, and increased blood pressure.

17. Plaintiff reported the mistreatment to which she was subjected to the Defendant's human resources department, but no remedial action was taken and the mistreatment of Plaintiff continued.

18. As 2019 progressed, Plaintiff's treatment by the Defendant continued to get worse. As a result, Plaintiff's stress levels and severe depression worsened as well. Plaintiff was seeing a therapist in order to cope with her anxiety.

ℬ THE BURTON FIRM

19. One meeting between Plaintiff and her supervisor led to Plaintiff having a panic attack. Plaintiff was held in the health and wellness center as her blood pressure had spiked. A doctor advised Plaintiff to take time off, as he felt it was life threatening for Plaintiff to continue working under the then-present conditions. Plaintiff was also referred to a psychiatrist in order to continue treatment past 30 days and for the purpose of Plaintiff being prescribed medication.

20. Compounding the problem, two of the Plaintiff's loved ones passed away in March 2019.

21. In approximately late May 2019, Plaintiff spoke to the Defendant's human resource department regarding how her treatment was affecting her health. The human resources department advised Plaintiff to think about taking some time off to "take care of yourself." The Defendant's human resources manager sent Plaintiff the company's disability service information.

22. On June 6, 2019, Plaintiff was approved for short term disability stress leave under the FMLA and was notified by phone not to report to work. Plaintiff was not advised to do anything else. Plaintiff was directed not to turn in her computer or badge.

23. Plaintiff's decision to exercise FMLA leave made the Defendant's personnel unhappy. The Defendant's personnel schemed to terminate Plaintiff as a result.

24. During her leave, Plaintiff's team's updates did not reflect the usual 'leave status' when an associate is out, indicating that the Defendant was internally handling the situation as if it were terminating Plaintiff.

B THE BURTON FIRM

25. In July 2019, one of the Defendant's human resource employees contacted Plaintiff and informed her that her company identification and access card was going to be deactivated. Plaintiff asked if this was unique to her, as other associates were able to keep their access during leave. The human resource employee's refused to answer Plaintiff's question. This caused Plaintiff additional stress since human resources is not supposed to contact an associate on leave without notifying the disability coordinator.

26. On August 21, 2019, Plaintiff received an email from the Defendant with instructions to report to work to discuss Plaintiff's return to work and department expectations on August 22, 2019. The location of this meeting was not in Plaintiff's usual office. Plaintiff contacted human resources to confirm this information, especially considering the non-standard location for the meeting.

27. Ahead of Plaintiff's return from leave on August 22, 2019, the Defendant's security guards had been put on alert as to her presence.

28. Additionally, upon information and belief, the Defendant searched Plaintiff's computer during the time of her leave, looking for pretextual grounds upon which to terminate her.

29. On August 22, 2019, on Plaintiff's first day back from leave, she was immediately terminated.

30. As purported grounds for the termination, the Defendant blamed Plaintiff's work performance. These purported grounds were pretextual.

31. As a result of this illegal conduct, Plaintiff has suffered damages, including loss of employment, wages, benefits, and other remuneration to which she is entitled.

Ḃ THE BURTON FIRM

32. As a result of the foregoing, the Defendant interfered with Plaintiff's FMLA rights, and retaliated against her for utilizing what should have been proper and authorized FMLA leave, and objecting to Defendant's misconduct regarding same.

33. Because the Defendant acted with intent to interfere with, and otherwise retaliate against Plaintiff for her use of what should have been protected FMLA leave and her objection to Defendants penalizing her for same, Defendant's actions also constitute FMLA retaliation.

34. The timing of Plaintiff's use of what should have been protected FMLA and objections to the Defendant's misconduct regarding same, and Defendant's termination of her alone, demonstrates a causal connection between her FMLA leave and the illegal actions taken by Defendant against her.

35. The Defendant purposefully and intentionally interfered with, and retaliated against Plaintiff, for use of FMLA protected leave and objections to the Defendant's misconduct regarding same.

36. The Defendant did not have a subjective or objective good faith basis for its actions, and Plaintiff is therefore entitled to liquidated damages.

## COUNT I
## UNLAWFUL INTERFERENCE UNDER THE FMLA

37. Plaintiff repeats and re-alleges the allegations of Paragraphs 1 through 36 as if fully set forth herein.

38. At all times relevant hereto, Plaintiff was protected by the FMLA.

39. Defendant interfered with Plaintiff based upon Plaintiff's exercise of her FMLA rights.

B THE BURTON FIRM

40. Plaintiff was protected from interference under the FMLA.

41. As a result of Defendant's intentional, willful, and unlawful acts by interfering with Plaintiff for exercising her rights pursuant to the FMLA, Plaintiff suffered damages and incurred reasonable attorneys' fees and costs.

42. As a result of Defendant's willful violations of the FMLA, Plaintiff is entitled to liquidated damages.

**WHEREFORE**, Plaintiff demands judgment against Defendant for back pay, an equal amount as liquidated damages, other monetary damages, equitable relief, declaratory relief, reasonable attorneys' fees and costs, and any and all further relief that this Court deems just and proper.

## COUNT II
## RETALIATION UNDER THE FMLA

43. Plaintiff repeats and re-alleges the allegations of Paragraphs 1 through 36 as if fully set forth herein.

44. At all times relevant hereto, Plaintiff was protected by the FMLA.

45. Defendant retaliated against Plaintiff based upon Plaintiff's exercise of her FMLA rights.

46. Plaintiff was protected from retaliation under the FMLA.

47. Defendant acted with the intent to retaliate against Plaintiff because Plaintiff exercised her rights to take approved leave pursuant to the FMLA and objected to Defendant's misconduct regarding same.

48. As a result of Defendant's intentional, willful, and unlawful acts by retaliating against Plaintiff for exercising her rights pursuant to the FMLA and objecting

to Defendant's misconduct regarding same, Plaintiff suffered damages and incurred reasonable attorneys' fees and costs.

49. As a result of Defendant's willful violations of the FMLA, Plaintiff is entitled to liquidated damages.

**WHEREFORE**, Plaintiff demands judgment against Defendants for back pay, an equal amount as liquidated damages, other monetary damages, equitable relief, declaratory relief, reasonable attorneys' fees and costs, and any and all further relief that this Court determines to be just and appropriate.

## DEMAND FOR JURY TRIAL

50. Plaintiff demands a trial by jury on all issues so triable.

Dated: March 16, 2020

        Respectfully submitted,

        *Counsel for Plaintiff Ca'Trice Simmons*

        **THE BURTON FIRM, P.A.**
        2875 N.E. 191 Street, Suite 403
        Miami, Florida 33180
        (305) 705-0888 phone
        (305) 705-0008 fax
        pleadings@theburtonfirm.com

By: /s/ Marc A. Burton
     Richard J. Burton, Esq.
     Florida Bar No. 179337
     Marc A. Burton, Esq.
     Florida Bar No. 95318
     Daniel J. Poterek, Esq.
     Florida Bar No. 85204